UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**Steven R. Green,**

    **Plaintiff,**

-v-                                                                                                       Case No. 2:07 CV 778
                                                                                                     JUDGE SMITH
                                                                                                     Magistrate Mark Abel


**Logan County, Ohio,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

       Plaintiff, Steven R. Green, the duly appointed Administrator of the Estate of Joan M. Green, initiated this suit under 42 U.S.C. § 1983 to vindicate the due process rights guaranteed to Plaintiff's decedent. In addition, Plaintiff raises several Ohio tort claims. Plaintiff brings suit against the following defendants: Logan County, Ohio; the Logan County Board of Commissioners; the Logan County Juvenile Court Residential Home Board; John Bayliss, Jack Reser, and David Knight, individually and in their official capacities as Commissioners and as Logan County Juvenile Court Residential Home Board Members; Judge Michael Brady, individually and in his official capacity as Administrator of the Logan County Juvenile Court Residential Home; Robert E. Beightler, Jr., individually and in his official capacity as Logan County JSO Probation Officer, Consolidated Care, Inc. ("CCI") and Jennifer Burrows ("Burrows") (collectively "Defendants").

       CCI and Burrows, two defendants who were added to the Amended Complaint, move for a judgment on the pleadings on all eight Counts of Plaintiff's Amended Complaint. Because only

CCI and Burrows move for judgment on the pleadings, the claims against them will be addressed in turn below. Regardless of the outcome of the pending motion, Plaintiff's Complaint will remain pending against all other defendants.

This action asserts a federal claim; therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. In addition, this Court has pendant jurisdiction over the Ohio state law claims pursuant to 28 U.S.C. § 1367. Both Plaintiff and CCI and Burrows briefed this Court on the motion for judgment on the pleadings, and this Motion is now ripe for review. For the reasons that follow, the Court **GRANTS** CCI's and Burrows' motion for judgment on the pleadings.

## I. BACKGROUND

For purposes of ruling on CCI's and Burrows' motion for judgment on the pleadings, this Court accepts as true the well-pleaded facts set forth in the Amended Complaint (Doc. 10). Plaintiff Steven R. Green is the duly appointed Administrator of the Estate of Joan M. Green and he brings this case under his title as Administrator of the Estate.

Between midnight on December 23, 2005, and 9:00 A.M. on December 24, 2005, Christopher E. Tindall ("Tindall") exited the Logan County Juvenile Court Residential Home ("Group Home") and unlawfully entered a nearby home owned by Joan M. Green. Tindall proceeded to beat, rape, and kill Joan M. Green. Plaintiff brought suit for Joan M. Green's murder against Logan County, Ohio; the Logan County Board of Commissioners; the Logan County Juvenile Court Residential Home Board; John Bayliss, Jack Reser, and David Knight, individually and in their official capacities as Commissioners and as Logan County Juvenile Court Residential Home Board Members; Judge Michael Brady, individually and in his official capacity as Administrator of the Logan County Juvenile Court Residential Home; Robert E.

Beightler, Jr., individually and in his official capacity as Logan County JSO Probation Officer; as well as CCI and its licensed social worker, Burrows.

The events and decisions that preceded the murder of Joan M. Green are critical to a proper understanding of this case. Tindall was convicted of rape in 2003 at the age of thirteen years old. After serving nearly two years at the Ohio Department of Youth Services, Tindall was placed in the Group Home with specific additional requirements on August 8, 2005.

The Group Home began operation on May 24, 2005, when the State of Ohio's Job and Family Services issued a certificate to the Logan County Juvenile Court to operate this Group Home at 726 North Main Street, Bellefontaine, Ohio. The Group Home had the capacity for six juvenile offenders. The Group Home was manned by Logan County employees, known as "parents," probation officers, and other county employees.

CCI is an Ohio corporation that contracted with the Group Home to provide counseling services to those under the oversight of the Group Home. This contract was in place at all relevant times to the proceedings. Further, Burrows is a licensed social worker by the State of Ohio, who was employed by CCI at all relevant times to the proceedings. Burrows was acting in the course and scope of her employment when providing counseling and therapy in Logan County to Tindall.

Plaintiff alleges that on August 8, 2005, that Defendants placed Tindall in the Group Home in violation of Defendants' own written policy.[1] Tindall was placed in the Group Home with specific additional requirements that he be evaluated for his known anger and sexual criminal proclivity, that an additional alarm was placed on his door, and that he was to have a

---

[1] Plaintiff does not assert with particularity which defendants had a written policy.

constant companion with him when he attended Bellefontaine High School. Further, Plaintiff alleges that Defendants knew the supervising "parents" at the Group Home did not agree to take in Tindall, and the "parents" felt they were inadequately trained to deal with offenders such as Tindall.

Tindall was found viewing pornography on the Group Home's computer and, consequently, was placed in the Logan County Juvenile Detention Center for violating his parole in late October 2005. Tindall returned to the Group Home on November 14, 2005, and some of the "parents" expressed concern about his anger and violence issues. On and after November 20, 2005, the Defendants were advised by one of the Group Home's substitute "parents" that she believed Tindall was a "very sick boy with an anger problem" and that she was concerned about physical harm to her and to others with whom Tindall may come into contact.$^2$ (Am. Compl. ¶ 24). She warned that there was "no doubt in [her] mind that he will hurt someone." *Id.* Plaintiff alleges that others in the Group Home expressed similar concerns.

CCI assigned Burrows as Tindall's counselor and therapist on his Juvenile Sexual Offender Team. Plaintiff alleges that both CCI and Burrows consistently recommended that Tindall be placed in the Group Home. CCI and Burrows both knew that the Group Home was unsecured, that Tindall's room alarm was not in use, that the "parents" and others voiced concerns that Tindall may hurt someone, and that Tindall threatened violence after he was returned to the Group Home.

Plaintiff initiated this case on August 8, 2007, asserting eight claims. Count I is brought

---

$^2$ The Amended Complaint does not assert with particularity which defendants were advised by the substitute "parent."

pursuant to 42 U.S.C. § 1983 to vindicate the due process rights guaranteed to Plaintiff's decedent under the Fourth Amendment to the Constitution of the United States as applicable through the Fourteenth Amendment to the Constitution of the United States. Count II claims Defendants were negligent in their placement, re-placement, keeping and supervising Tindall in the Group Home, and as a direct and proximate result of defendants' actions, Joan M. Green suffered extreme conscious pain and suffering prior to her wrongful death. Count III claims Defendants created a public nuisance. Count IV claims Defendants created a private nuisance. Count V claims Defendants created a qualified private nuisance. Count VI claims that the acts or omissions of individual defendants Bayliss, Reser, Knight and Brady were with malicious purpose, in bad faith, or in a wanton or reckless manner. Count VII claims the same against defendant Beightler. Count VIII claims that CCI and Burrows' actions were negligent. Although defendants CCI and Burrows are only named in a single count, Plaintiff asserts that all eight Counts are brought against CCI and Burrows.  (Pl.'s Memo. in Opp. at 1).

## II. RULE 12(c) JUDGMENT ON THE PLEADINGS STANDARD

Federal Rule of Civil Procedure 12(c) provides that "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." It is well settled that a court must review a Rule 12(c) motion under the same standard applicable to a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Under the United States Supreme Court's recent articulation of the standard, courts must construe the complaint in favor of Plaintiff, accept the factual allegations contained in the amended complaint as true, and determine whether Plaintiff's factual allegations plausibly suggest viable claims.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  The claims must be plausible and

not merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974.

The purpose of a motion under either rule is to test the sufficiency of the complaint. A complaint need not set down in detail all the particulars of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Nonetheless, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). A court must not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Id.* A court will, however, indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

Courts should grant motions for judgment on the pleadings when there is an absence of law or facts to support a claim. Courts may also grant motions for judgment on the pleadings when, on the face of the complaint, there is an insurmountable bar to relief. *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (*citing Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

### III. DISCUSSION

Plaintiff asserts claims under Federal and State law against CCI and Burrows who move for judgment on the pleadings. The claims against them will be addressed in the following order: Count I – Deprivation of Due Process (42 U.S.C. § 1983); Count VIII – State Law Claim of Negligence by CCI and Burrows; Count II – State Law Claims: Negligence and Wrongful Death, Counts VI & VII – State Law Claims for Malicious, Bad Faith; Wanton and Reckless Conduct of Certain Defendants; Counts III, IV, & V – State Law Claims of Public, Private, and Qualified

Private Nuisance. Regardless of the outcome of the pending motion, Plaintiff's Complaint will remain pending against all other defendants.

**A.     Count I - Deprivation of Due Process (42 U.S.C. § 1983)**

Plaintiff's first claim is brought pursuant to 42 U.S.C. § 1983 to vindicate the due process rights guaranteed to Plaintiff's decedent under the Fourth Amendment to the Constitution of the United States as applicable through the Fourteenth Amendment to the Constitution of the United States. Plaintiff alleges Defendants acted at all times under color of State law and "By the widespread practice so permanent and well-settled as to constitute custom and usage, the policies and actions by *Defendants Logan County Commissioners, Group Home Board, and Administrator Brady,* were deliberately indifferent in training, supervising, disciplining the operations of the Group Home and/or failed to adopt policies necessary to prevent constitutional violations all of which created a specific danger to Joan M. Green, which proximately caused the damages as alleged . . . ." (Am. Compl. ¶¶ 32-33) (emphasis added).

Count I of Plaintiff's Amended Complaint fails to identify any specific conduct by CCI or Burrows which violated Plaintiff's Due Process rights. Though Count I specifically addresses policies and actions by three defendants—Logan County Commissioners, Group Home Board, and Administrator Brady—it fails to allege policies or actions by CCI or Burrows that violated Plaintiff's Due Process Rights. Consequently, Count I is not sufficiently pleaded to put CCI and Burrows on notice of such claim against them.

In addition, in order to prevail in a § 1983 action, Plaintiff has the burden of showing that the decedent was deprived of a constitutional right and that the deprivation occurred under color of State law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Flagg Bros., Inc. v. Brooks*, 436 U.S.

149, 155-56 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Even though Plaintiff alleges Defendants at all times were acting under color of State law, this Court does not accept conclusions of law made by the Plaintiff in a motion for judgment on the pleadings. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971). The mere fact that CCI contracted with the Commissioners and Logan County, Ohio, to provide counseling services to individuals in the Group Home does not compel this Court to conclude CCI and Burrows were state actors. Solely based on the Amended Complaint, this Court is unable to ascertain whether CCI or Burrows was a state actor at relevant times. Plaintiff fails to demonstrate CCI or Burrows acted under color of State law at relevant times. CCI and Burrows are therefore both entitled to judgement as a matter of law on Plaintiff's Count I claim against them.

This Court chooses to exercise its discretion and also decide this motion as relating to Plaintiff's Ohio state law claims. Even though Plaintiff's sole Federal claim relating to CCI and Burrows has been dismissed, as a matter of judicial efficiency, convenience, and fairness, CCI's and Burrows' motion for judgment on the pleadings for the additional counts will also be decided. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that pending jurisdiction is a doctrine of discretion and courts may look to these factors when exercising their judgment). Both sides have briefed this Court pertaining to the state law claims. In addition, all counts revolve around the same factual occurrence, and the Federal claims against the other named defendants still remain before this Court. Therefore, this Court will decide CCI's and Burrows' motion for judgment on the pleadings relating to the Ohio tort claims.

**B.      Count VIII – State Law Claim of Negligence by CCI and Burrows**

Plaintiff alleges that CCI was negligent in its supervision of Burrows. (Am. Compl. ¶ 56). In addition, Plaintiff claims Burrows was negligent in her work as a licensed social worker and therapist by failing to control Tindall, and that Burrows failed to meet the standards of a reasonably skilled social worker and therapist. (Am. Compl. ¶ 57). Further, Plaintiff claims that CCI and Burrows acted "with malice" and "in a wanton and reckless manner," thereby consciously disregarding Joan Green's rights. (Am. Compl. ¶ 59). Because CCI and Burrows took charge of Tindall, whom they knew or should have known to be likely to cause bodily harm to others if not controlled, Plaintiff alleges that CCI and Burrows possessed a duty to exercise reasonable care to control Tindall to prevent him from doing such harm.

When determining state law claims, a federal court must apply the applicable substantive law of the state. *See Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 78 (1938). Therefore, this Court must apply applicable Ohio law to determine Plaintiff's state law negligence claim against CCI and Burrows.

In Ohio, a mental health professional or a mental health organization may be held liable in a civil action for harm that results from their patient only if the injured individual establishes liability under the statute governing liability for violent behavior of mental health patients. Ohio Revised Code section 2305.51 provides:

> A mental health professional or mental health organization may be held liable in damages in a civil action, or may be made subject to disciplinary action by an entity with licensing or other regulatory authority over the professional or organization, for serious physical harm or death resulting from failing to predict, warn of, or take precautions to provide protection from the violent behavior of a mental health client or patient, *only if the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims*, the professional or organization has reason to believe that the client

-9-

>or patient has the intent and ability to carry out the threat, and the professional or organization fails to take [certain delineated actions] in a timely manner. . . .

O.R.C. § 2305.51(B) (emphasis added). This statute establishes absolute immunity from liability for mental health professionals and mental health organizations for physical harm or death caused by their mental health patients unless specific conditions are met.

A mental health professional is "an individual who is licensed, certified, or registered under the [Ohio] Revised Code, or otherwise authorized in this state, to provide mental health services for compensation, remuneration, or other personal gain." O.R.C. § 2305.51(A)(1)(d). Burrows was a licensed social worker by the State of Ohio who provided counseling and therapy to Tindall. (Am. Compl. ¶ 12). The counseling and therapy provided to Tindall by Burrows falls under the definition of mental health service defined under O.R.C. § 2305.51(A)(1)(e). Therefore, Burrows is a mental health professional, which entitles her to the protective immunity provided by O.R.C. § 2305.51, unless Plaintiff overcomes this immunity with an exception.

A mental health organization is "an organization that engages one or more mental health professionals to provide mental health services to one or more mental health clients or patients." CCI is an Ohio Corporation that provides counseling services to individuals. (Am. Compl. ¶ 11). By employing Burrows, CCI had at least one employee at the relevant time who was a mental health professional. Further, CCI provided mental health services to at least one patient, Tindall. Therefore, CCI is a mental health organization, which entitles it also to the protective immunity provided by O.R.C. § 2305.51, unless Plaintiff overcomes this immunity with an exception.

The sole exception to the immunity provided by O.R.C. § 2305.51 is if the patient or a "knowledgeable person" directly communicates to the mental health organization or mental

health professional an *explicit threat* against *clearly identifiable* persons. Ohio courts have defined an "explicit threat" as being a threat against the particular individual who subsequently was injured. *See Stewart v. North Coast Center*, No. 2005-A-0042, 2006 WL 1313098 at *6 (Ohio App. 11, 2006). Even if explicit threats against identifiable persons are made, the mental health organization or mental health professional remains immune from liability unless the Plaintiff can show the mental health organization or mental health professional had reason to believe the patient was capable of carrying out the stated threat and still did not take certain statutorily prescribed measures. *See* O.R.C. § 2305.51(B).

The Ohio Supreme Court has applied O.R.C. § 2305.51 in negligence cases against mental health providers. *Campbell v. Ohio St. Univ. Med. Ctr.*, 108 Ohio St.3d 376 (Ohio 2006). In *Campbell*, the Ohio Supreme Court upheld trial and appellate court decisions that held a patient injured by another mental health patient must prove an explicit threat of injury to her under O.R.C. § 2305.51 in order to maintain action against a mental health institution. 108 Ohio St.3d 376, 378 (Ohio 2006). This holding was applied even though a patient in a mental-health institution has a right to reasonable protection from the violent conduct of others according to O.R.C. § 5122.29(B)(2).

Plaintiff's negligence claim must be pleaded in such a way as to overcome the immunity conferred by O.R.C. § 2305.51. Therefore, Plaintiff must allege that either Christopher Tindall or a "knowledgeable person" conveyed to CCI or Burrows an explicit threat by Tindall against a clearly identifiable person. Plaintiff must also plead that CCI or Burrows failed to exercise their statutory duties.

According to the Amended Complaint there was no explicit threat against the

-11-

clearly identifiable person, Joan M. Green, that was conveyed to CCI or Burrows by either Christopher Tindall or a "knowledgeable person." "When a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume those facts do not exist." *Scheid v. Fanny Farmers Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Although Plaintiff alleges that CCI and Burrows "knew or should have known [Tindall] to be likely to cause bodily harm to others if not controlled," this conclusory statement does not meet the threshold set by O.R.C. § 2305.51. (Am. Compl. ¶ 55). Further, the comments by the substitute "parent" who expressed her belief that Tindall was a "very sick boy with a huge [] anger problem," concerns about physical harm to her and others with whom Tindall may come into contact, and warnings that there was "no doubt in [her] mind that he will hurt *someone*" also fail to include an explicit threat against the identifiable individual, Joan M. Green. (Am. Compl. ¶ 24) (emphasis added). The allegation that CCI and Burrows "knew . . . that the group parents and others were very concerned that Tindall would hurt someone somewhere, and that Tindall was threatening violence after he was returned to the Group Home. . ." also fails to contain an explicit threat against Joan M. Green. (Am. Compl. ¶ 25). Therefore, even with a reading of the Amended Complaint that accepts each of the Plaintiff's claims as true, because Plaintiff does not assert that Tindall made an explicit threat against an identifiable individual, this Court concluded that Plaintiff has not overcome either CCI's or Burrows' statutory immunity.

Plaintiff attempts to circumvent statutory immunity by claiming that the County is not a mental health patient and that CCI and Burrows solely provided services to the

County. (Mem. in Opp. at 4). Although CCI contracted with the County, at the relevant time, CCI and Burrows provided counseling and therapy to Tindall. In fact, Plaintiff specifically pleads that Burrows was an employee of CCI who provided counseling and therapy to Tindall. (Am. Compl. ¶¶ 11, 12). Therefore, CCI and Burrows are afforded the immunity provided by O.R.C. § 2305.51.

Accordingly, CCI and Burrows are entitled to judgement as a matter of law on Plaintiff's Count VIII claim against them.

C.  **Count II - State Law Claims: Negligence and Wrongful Death**

Plaintiff asserts that "Defendants were negligent in the placement, re-placement, keeping and supervising Tindall in the [Group] Home and in failing to ensure that the requirements Defendants' placed upon Tindall were carried out." (Am. Compl. ¶ 35). Plaintiff also alleges that Defendants' actions and omissions caused Joan M. Green to suffer extreme conscious pain and suffering prior to her wrongful death. Plaintiff further claims that his "statutory beneficiaries suffered severe mental anguish and have lost the society [sic] and the loss of her services."(Am. Compl. ¶ 37).

Set forth above, the Ohio General Assembly afforded CCI and Burrows immunity from civil claims of physical harm or death caused by mental health patients by enacting O.R.C. § 2305.51. The immunity afforded under this provision of the Ohio Revised Code applies to any failure of a mental health professional "to predict, warn of, *or take precautions to provide protections from* the violent behavior of a mental health patient." O.R.C. § 2305.51(B) (emphasis added). For the reasons stated above, Plaintiff fails to overcome the immunity provided by  O.R.C. § 2305.51.

Further, Plaintiff's negligence claim is founded on Defendants' negligent placement, re-placement, keeping, and supervising of Tindall. Plaintiff states "Defendants Logan County, Commissioners, Group Home Board, Bayliss, Reser, Knight, Brady, CCI and Burrows had decided, in violation of Defendants' own written policy, that the Group Home was a proper facility for housing violent criminals and juvenile sex offenders, such as Tindall." (Am. Compl. ¶ 21). However, Plaintiff provides further details pertaining to CCI's and Burrows' roles when he states that they both "consistently recommended that Tindall should be placed in the Group Home. . . ." (Am. Compl ¶ 25). Based on the Amended Complaint, CCI and Burrows only made recommendations, and other individuals were responsible for the placement and re-placement of Tindall in the Group Home. In addition, the keeping and supervising of Tindall was done by Logan County employees and probation officers, not CCI and Burrows. (Am. Compl. ¶ 19). Because CCI and Burrows did not place, re-place, keep, or supervise Tindall, neither can be negligent for these alleged actions.

Accordingly, CCI and Burrows are entitled to judgement as a matter of law on Plaintiff's Count II claim against them.

**D.     Counts VI & VII – State Law Claims for Malicious, Bad Faith, Wanton and Reckless Conduct of Certain Defendants**

Counts VI and VII target specific defendants. Count VI of the Amended Complaint specifically claims the acts of omissions of individual defendants Bayliss, Reser, Knight, and Brady were with malicious purpose, in bad faith, or in a wanton or reckless manner. (Am. Compl. ¶ 49). Count VII claims individual defendant Beightler's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless

manner. (Am. Compl. ¶ 52). While specifically naming individual defendants, neither of these state law claims indicates any acts or omissions by either CCI or Burrows.

Because Counts VI and VII are inapplicable to CCI or Burrows, and because Counts VI and VII are not sufficiently pleaded to put CCI or Burrows on notice of such claims against them, both counts must be dismissed as against CCI and Burrows.

**E.     Counts III, IV, & V - State Law Claims of Public, Private, and Qualified Private Nuisance**

Plaintiff states three additional state law claims: public nuisance, private nuisance, and qualified private nuisance, all of which stem from certain defendants creating, operating, and maintaining the Group Home.

Plaintiff's Amended Complaint specifies which defendants created, operated, and maintained the Group Home: "[O]n behalf of the Logan County Family Court . . . Defendant Logan County Juvenile Court Residential Home Board [sic] *established and operated* the Group Home to house Logan County juvenile offenders placed there by the Logan County Juvenile Court." (Am. Compl. ¶ 5). The Group Home Board that ran the Group Home consisted of defendants Bayliss, Reser, and Knight and was administered by defendant Brady. (Am. Compl. ¶ 18). Plaintiff alleges the Group Home was staffed by Logan County employees and probation officers. (Am. Compl. ¶ 19).

The Amended Complaint fails to identify CCI or Burrows as having a role in creating, operating, and maintaining the Group Home. Instead, the Amended Complaint asserts CCI and Burrows merely provided counseling services to Tindall (Am. Compl. ¶¶ 11, 12). Therefore, these three Counts are inapplicable to CCI and Burrows.

Counts III, IV, and V must be dismissed as against CCI and Burrows..

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** CCI's and Burrows' motion for judgement on the pleadings pertaining to all counts.

The Clerk shall remove Document 23 from the Court's pending motions list.

This case remains pending as to the other named Defendants

**IT IS SO ORDERED**

 /s/ George C. Smith
GEORGE C. SMITH, JUDGE
UNITED STATES DISTRICT COURT